UNITED STATES of America, Appellee,

v.

Thomas Calvin RICKS, a/k/a Joe Dancer, Appellant.

UNITED STATES of America, Appellee,

v.

James A. CARTER, Appellant.

UNITED STATES of America, Appellee,

v.

Marcell MOFFATT, a/k/a Black Barney, Appellant.

UNITED STATES of America, Appellee,

v.

Stanley RODGERS, Appellant.

UNITED STATES of America, Appellee,

v.

Kerney William LINDSEY, a/k/a Wilco, Appellant.

UNITED STATES of America, Appellee,

v.

Beatrice ROBERTS, Appellant.

UNITED STATES of America, Appellee,

v.

Maurice David KING, a/k/a Peanut, Appellant.

Nos. 83–5060(L), 83–5061 to 83–5064, 83–5066 and 83–5081.

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1986.

Decided Oct. 2, 1986.

Ransom J. Davis (H. Russell Smouse, Harry J. Matz, Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, Md., on brief) for appellant James A. Carter.

Stuart R. Blatt, Baltimore, Md., for appellant Beatrice Roberts.

W. Gary Kohlman (Kohlman & Fitch, Kenneth Michael Robinson, Washington, D.C., on brief) for appellant Maurice David King.

James B. Moorhead, Asst. U.S. Atty. (Breckinridge L. Willcox, J. Frederick Motz, U.S. Attys., Baltimore, Md., Stephen Bailey, Second Year Law Student, on brief) for appellee.

Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN, and WILKINSON, Circuit Judges, sitting in banc.

HARRISON L. WINTER, Chief Judge:

These appeals have been reheard in banc. We conclude that the judgments of conviction for all defendants must be reversed and they must be granted new trials.

## I.

The facts are set forth in the panel opinions and need not be repeated here. *United States v. Ricks*, 776 F.2d 455 (4 Cir. 1985). The panel majority ruled that the district court committed reversible error when it failed, albeit inadvertently, to give defense counsel unequivocal advice as to the section of the list of jurors from which the jury would be selected. The failure, it concluded, resulted in an impermissible dilution of defendants' statutory right to peremptory challenges of prospective jurors. We too hold, for the reasons set forth by the majority and the additional reasons set forth below, that there was an impermissible dilution of defendants' statutory right to peremptory challenges of prospective jurors necessitating reversal of their convictions and the grant of a new trial.

Because the panel majority granted the defendants a new trial, it expressed its view on a number of issues which were likely to arise on retrial and it withheld decision on others. As to those which were decided, we too make the same rulings for the reasons advanced by the majority. We

also decide one issue reserved by the majority, and hold that King may be convicted of a violation of 21 U.S.C. § 848 upon proof of two violations of 21 U.S.C. § 841 plus proof of a violation of 21 U.S.C. § 846. Stated otherwise, we rule that a conviction of a conspiracy under 21 U.S.C. § 846 may be a predicate offense for conviction of violating 18 U.S.C. § 848.

## II.

The majority panel opinion expressed two thoughts which we think are an alternate basis of decision. First, in footnote 4 it was said "that an excessively large venire could have the ... effect [of diluting the right to peremptory challenges] even if the procedure were clearly explained. The usual practice with a struck jury system, which we encourage, is for the list to contain only the approximate number of necessary potential jurors." Next, in footnote 9, it is suggested that "absent a local rule of court or established local practice about how a jury will be selected and how peremptory strikes should be exercised with respect to a large venire, there is a duty on the part of the court to give clear, unambiguous instructions to counsel about the procedure to be followed and that a failure on the part of the court in this respect is plain error." Closer study of the authorities sustaining the validity of a "struck jury" system leads us to hold that it is essential to the validity of a jury chosen by the "struck jury" system that the list given to counsel contain only the approximate number of necessary potential jurors, or, if a larger list is given, that the court give clear, unambiguous instructions about the portion of the list, containing not more than the approximate number of necessary potential jurors, from which the jury will be selected.

### A.

The right to peremptory challenges has been characterized as "one of the most important of the rights secured to the ac-

cused." *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894). Although not a constitutional right, "[t]he persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury." *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965). Most recently, in a case limiting the use of peremptories to exclude veniremen on the basis of race, the Supreme Court again acknowledged the historic function of peremptory challenges "as one means of assuring the selection of a qualified and unbiased jury." *Batson v. Kentucky*, —— U.S. ——, ——, 106 S.Ct. 1712, 1720, 90 L.Ed.2d 69 (1986).

The method for exercising peremptory challenges depends upon the method of jury selection. In the "jury box" system of jury selection, the parties exercise their challenges against jurors already seated in the box, and who will remain on the jury unless challenged. This case, however, concerns the use of the "struck jury" method of jury selection where the trial judge tenders to each party a list of qualified veniremen and each side exercises its peremptories against the names on the list. If, after each side exercises its strikes, there remains more than twelve persons on the list, the trial judge must decide which twelve will constitute the jury.[1]

It is self-evident that the right to a given number of peremptory challenges becomes less and less effective as the list of potential jurors against which the challenges must be exercised grows larger than the approximate number of veniremen needed to comprise a jury. When the "jury box" method of selection is used, a party knows that each time he strikes a venireman sitting in the box, he is assured of removing someone from the panel who otherwise would serve as a juror. But when the trial court submits a struck jury list on which more than twelve names will remain after each side exercises its peremptory strikes,

---

**1.** For a fuller discussion of differences between the "struck jury" and "jury box" methods of administering peremptory strikes, *see United States v. Blouin*, 666 F.2d 796 (2 Cir.1981).

and the judge then selects the jury in a manner not previously disclosed, the defendant faces the prospect—the actuality in the instant case—of wasting strikes on veniremen the trial judge ultimately chooses to exclude from the jury.

The effect of a larger than necessary "struck jury" list is, thus, to dilute the defendant's right to exclude potential jurors of whom he disapproves, but for whom he lacks a basis for an objection for cause. The Supreme Court has stated: "The denial or impairment of the right [to peremptory challenges] is reversible error without a showing of prejudice [citations omitted]. 'For it is, as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose.'" *Swain, supra,* 380 U.S. at 219, 85 S.Ct. at 835 (*quoting Lewis v. United States,* 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892)). *See also Pointer, supra,* 151 U.S. at 408, 14 S.Ct. at 414 ("Any system for the impaneling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right, must be condemned.") We think it clear that the dilution that results from the court submitting an overly-large struck jury list without limiting instructions hinders the full, unrestricted exercise of peremptory challenges and violates an essential part of the right to trial by jury. We reach this conclusion from our review of the history of the struck jury system.

### B.

*Swain v. Alabama,* 380 U.S. 202, 217, 85 S.Ct. 824, 834, 13 L.Ed.2d 759 (1965), noted that "[t]he system of struck juries ... has its roots in ancient common-law heritage." In a footnote the Court describes how the jury was selected: "Historically 48 names would be selected from a special jury list and each side would alternately strike 12 names, the remaining 24 being summoned for the case." *Id.* at 217, 85 S.Ct. at 834 n. 21. The Court there cites to Blackstone who explains that this practice of selecting "*special* juries" was "originally introduced in trials at bar when the causes were of too great nicety for the discussion of ordinary freeholders, or where the sheriff was suspected of partiality." 3 Blackstone's Commentaries 357 (1897) (emphasis in original). Common juries were selected by the "jury box" method. *Id.* at 358.

The common-law method might seem to support the practice of the district court in the instant case, because after each side exercised twelve peremptory strikes, the remaining number (24) was twice as large as necessary for the jury. But at common law, the veniremen were summoned by the sheriff *after* the parties exercised their strikes against the list. Experience demonstrated that twenty-four veniremen were usually necessary to ensure that at least twelve persons appeared. J. Bentham, The Elements of the Art of Packing as Applied to Special Juries 31 (1821); *see also, Nesmith v. Atlantic Ins. Co.,* 8 Abb.Pr. 423, 424 (N.Y.1859). When less than twelve persons appeared, the court would simply complete the jury with "persons present in court." 3 Blackstone's Commentaries 365 (1897). Thus there was reason to require that peremptories be exercised against an excessively large list. By contrast, today there is not the same need to call an excessive number of veniremen because there is better attendance and statistically the number of excuses for cause can be determined with great accuracy. As a result, a sufficient number of veniremen to constitute a jury after the exercise of peremptories is usually present at the time that peremptory strikes are exercised. Further, at common law, if more than twelve veniremen did appear, the trial judge did not simply select any twelve to serve as jurors. In England, the twelve whose names "stood first" on the list were selected. Bentham, *supra,* at 31. Thus counsel had some indication of the portion of the list from which jurors would be chosen. In this country, *Swain* cites the New Jersey case of *Brown v. State,* 62 N.J.L. 666, 42 A. 811, *aff'd,* 175 U.S. 172, 20 S.Ct. 77, 44 L.Ed. 119 (1899) as illustrative of the struck jury system at common law in the United States. *Swain, supra,* 380 U.S. at 217 n. 21, 85 S.Ct. at 834 n. 21. Under that system, once the "spe-

cial jury" method was employed to obtain twenty-four potential jurors, the petit jury was selected from the twenty-four by using the "jury box" method of selection. In this last step of selection, the defendant was given an additional set of peremptories.[2]

Thus the common-law heritage does not support the challenged practice here. The rationale for summoning more than the minimum number required to draw a jury does not exist today where the veniremen are summoned and are present in the courtroom *before* any exercise of peremptory challenges. And even at common law, the defendant knew in advance of the means by which the final selection would be made. Certainly New Jersey's two-tiered system of peremptories reflects the common law's exceedingly strong belief in the importance of peremptory challenges.

The Supreme Court first considered and upheld the validity of a struck jury system in *Pointer v. United States,* 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894). Under that Arkansas system, "[t]he defendant and the government were ... furnished, each, with a list of the thirty-seven jurors [generally qualified under the law], that they might make their respective [peremptory] challenges, twenty by the defendant and five by the government, the remaining *first* twelve names, not challenged, to constitute the trial jury." 151 U.S. at 399, 14 S.Ct. at 411 (emphasis added). *See also id.*

at 409, 14 S.Ct. at 415 (emphasis added) (the defendant had "notice from the court that the *first* twelve unchallenged would constitute the jury"). The defendant objected, claiming that his right to peremptory challenges was impaired because he had to strike from a list of thirty-seven potential jurors, not knowing who the government would strike; consequently, the defendant might strike the same person the government struck, and waste a peremptory strike.

The Court rejected the defendant's claim by noting the fairness of the procedures employed:

> Being required to make all of his peremptory challenges at one time, he was entitled to have a full list of jurors upon which appeared the names of such as had been examined under the direction of the court and in his presence, and found to be qualified to sit on the case. Such a list was furnished to him, and he was at liberty to strike from it the whole number allowed by the statute, *with knowledge that the first twelve on the list, not challenged by either side, would constitute the jury.*

*Id.* at 411, 14 S.Ct. at 416 (emphasis added). While it is not clear from the opinion that the defendant's knowledge that the first twelve unchallenged jurors would constitute the jury was necessary to the Court's decision to uphold the struck jury system,

2. In *Brown,* the defendant challenged the struck jury system of New Jersey. At one time the New Jersey system was exactly as *Swain* described: each side struck 12 names from a list of 48, leaving 24. By an Act of 1898, the struck jury system was modified so that the two parties each struck 24 names from a list of 96, leaving 48. The 48 names are "placed in the box" and "the jury for trial of the case is drawn in the usual way." 42 A. at 821. The Court of Errors and Appeals of New Jersey explained the system:

> From the 96 names selected, the prisoner or his counsel is permitted to strike 24. The 48 names that remain after the prosecutor and the defendant have completed the striking are returned as the panel from which the jury of 12 men is to be selected. The list from which such panel is to be selected is in the hands of the defendant or his counsel at least 12 days before the impaneling of the jury.... Ample

time is afforded to him between the striking of the panel of jurors to be returned and the time of drawing the trial jury to enable counsel to ascertain grounds of objection to individual jurors which would be available upon a challenge for cause, and the defendant is allowed in addition 5 peremptory challenges *as the names are drawn from the box.* As the right of challenge is not a right to select, but to exclude, the accused on the striking of the jury has power to exclude 24 at will, and at the drawing of the names from the box to form the jury of 12 he has in addition 5 peremptory challenges.

*Id.* 42 A. at 818 (emphasis added). When the New Jersey court describes the second stage of the selection, the drawing of the names from the box, it is describing the "jury box" method. At this point the defendant is granted an additional five peremptory strikes against *those* drawn from the box to constitute the petit jury.

it was certainly a significant factor. In addition, as the review of further cases will demonstrate, the trial court's decision to submit a number of qualified jurors (37) equal to the combined number of peremptory challenges (20 defense and 5 prosecution) plus the twelve jurors needed for trial, was not accidental. It was simply following the standard and historic means of employing the struck jury method.

Decisions in several of our sister circuits also demonstrate that the struck jury list is traditionally limited to the number necessary to provide the petit jury. *See United States v. Blouin,* 666 F.2d 796 (2 Cir.1981); *United States v. Flaherty,* 668 F.2d 566 (1 Cir.1981); *United States v. Morris,* 623 F.2d 145 (10 Cir.), *cert. denied,* 449 U.S. 1065, 101 S.Ct. 793, 66 L.Ed.2d 609 (1980); *United States v. Williams,* 447 F.2d 894 (5 Cir.1971); *Amsler v. United States,* 381 F.2d 37 (9 Cir.1967). Although none of these cases actually holds that it is error for a district court to submit a jury list to counsel with more names than required, each case upholds a "struck jury" system including such a limit. In *Blouin,* the court explains:

> Under the 'struck jury' system, an initial panel is drawn by lot from those members of the array who have not been challenged and excused for cause; *the size of this initial panel equals the total of the number of petit jurors who will hear the case (twelve in a federal criminal trial), plus the combined number of peremptories allowed to both sides* (normally sixteen in federal felony trials, Fed.R.Crim.P. 24(b)). Counsel for each side then exercise their peremptory challenges, usually on an alternating basis, against the initial panel until they exhaust their allotted number and are left with a petit jury of twelve.

*Id.* at 796–97 (emphasis added). In *Amsler,* the district court submitted a list of thirty-seven veniremen to provide a jury of twelve with four alternates where the defense had thirteen peremptory strikes, the government had six, and each side was given an additional strike against the alternates. In upholding this struck jury system, the Ninth Circuit quoted the district judge's statement that "at all times counsel knows who their ultimate jury is going to be, and it is not exercising a challenge and not knowing who you might draw subsequently." *Id.* at 44. The court concluded that the system used "was eminently fair to both sides." *Id.* *See also Flaherty supra,* at 601 (33 names on list; minus 7 government peremptory strikes, 12 defense peremptory strikes; leaving a jury of 12 and 2 alternates); *Morris, supra,* at 151–52 (22 names on list; minus 6 government strikes, 10 defense strikes; leaving a jury of 6 with alternates to be selected separately); *Williams, supra* at 896–97 (32 names on list; minus 6 government peremptory strikes, 10 defense peremptory strikes, 1 additional strike for each side against the alternates; leaving a jury of 12 and 2 alternates).

Thus, in these five cases upholding the struck jury system, in addition to *Pointer,* the district courts had all limited the jury lists to the number of potential jurors necessary to provide a petit jury after the exercise of peremptory strikes. It is significant that *all* of these cases describe the system as such, because after an extensive review of federal cases, we have found *no* case supporting the contrary view. Thus, in every case where a court explained numerically how the struck jury system operated, the district court had provided no more names than necessary to fill out the jury panel. This fact at least indicates that the procedure followed by the district court in the instant case, i.e., tendering a longer list, without clearly identifying the place where selection of the jury would begin, is without precedent.

■ More significantly, from the historic operation of the struck jury system and from the careful recitation of facts showing that in each case upholding its validity, the number of veniremen supplied to counsel did not exceed the number of jurors actually required plus the authorized number of peremptory challenges, we conclude that a limitation of this kind is an essential

requirement of a valid struck jury system. It follows that if a list contains more names than are needed under this formulation, it becomes the duty of the district court to provide the functional equivalent by stating in unequivocal language the portion of the list which contains not in excess of the number of veniremen necessary to achieve a jury from which actual jury selection will be made, and we so hold. The failure to do so in this case is reversible error.

### III.

The majority panel opinion did not undertake to decide King's contention that a conviction under 21 U.S.C. § 846 could not serve as one of the three requisite narcotics violations upon which there could be a conviction for violation of 21 U.S.C. § 848. It noted, however, that dicta in *United States v. Lurz*, 666 F.2d 69 (4 Cir.1981), *cert. denied*, 459 U.S. 843, 103 S.Ct. 95, 74 L.Ed.2d 87 (1982), indicated that his contention was meritorious.

██ Upon consideration by the in banc court,[3] we conclude that King's contention is lacking in merit and that the dicta in *Lurz* to the contrary is not the law of this circuit. We are persuaded by the holdings in our sister circuits that the government may rely on a § 846 violation to establish a § 848 offense, and we conclude to follow them. *See United States v. Schuster*, 769 F.2d 337, 345 (6 Cir.1985); *cert. denied*, —— U.S. ——, 106 S.Ct. 1210, 89 L.Ed.2d 322 (1986); *United States v. Jones*, 763 F.2d 518, 524–25 (2 Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985); *United States v. Young*, 745 F.2d 733, 748–52 (2 Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *United States v. Brantley*, 733 F.2d 1429, 1436 n. 14 (11 Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383

(1985); *United States v. Middleton*, 673 F.2d 31, 33 (1 Cir.1982).

REVERSED AND REMANDED.

WILKINSON, Circuit Judge, with whom Circuit Judges Donald RUSSELL and K.K. HALL join, dissenting:

The court today announces, and applies retrospectively, a new rule that affects every criminal trial in this circuit: district judges must limit each venire to the minimum number necessary to accommodate peremptory strikes and to fill a jury. I cannot agree with the court's assumption of power or with its assumptions about the nature of peremptory challenges. The enactment of this new rule overrides the trial courts' traditional discretionary authority in an area of long-running debate and considerable creativity. And the premises of the new rule overstate the defendants' peremptory rights and understate the value of a large venire. I therefore continue to dissent from the reversal of these convictions.[1]

### I.

The majority holds that the size of the venire caused "an impermissible dilution of defendants' statutory right to peremptory challenges of prospective jurors." *Ante* at 732. Whether any "dilution" occurred, however, depends on the definition of the "statutory right to peremptory challenges." The first place to look for that definition is the statute in question, or in this case, Fed.R.Crim.P. 24(b). That rule, which is not even mentioned by the majority, says nothing about the size of the venire. It provides only that "[i]f the offense charged is punishable by imprisonment for more than one year, the government is entitled to six peremptory challenges and the defendant or defendants jointly to ten

---

**3.** Before the in banc court, King called attention to the portion of the record in which he preserved the point for review on appeal. The majority panel opinion erroneously thought that the issue was not preserved.

**1.** The panel opinions primarily addressed the duty of counsel to seek clarification of an am-

biguous court statement about jury selection. I adhere to my views on that issue but concentrate here on the point that no rules "required the trial court to choose [jurors] from a minimum fraction of the eligible candidates." *United States v. Ricks*, 776 F.2d 455, 468 (4th Cir. 1985) (Wilkinson, J., dissenting).

peremptory challenges.... If there is more than one defendant, the court may allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly." This statutory right to exclude ten venire members was fully satisfied here. The defendants struck twelve names from the list, and none of those people served on the jury. If not for the defendants' strikes, as the district court pointed out, one of the excluded venire members might have become the jury foreman.

Although the size of the venire did not affect the defendants' right to strike ten venire members, it did affect their ability to use the strikes to determine the composition of the jury. This latter, greater, power is what the majority finds has been "diluted." But apart from the Rule 24(b) authority to veto a designated number of venire members—to reject the most objectionable veniremen—the defendants simply had no right to determine the composition of their jury. It has long been settled that "[t]he right of peremptory challenge is not, of itself, a right to select, but a right to reject jurors." *United States v. Marchant and Colson*, 25 U.S. (12 Wheat.) 480, 482, 6 L.Ed. 700 (1827). The challenge may help to dispel a defendant's fears of juror bias, but it does not go so far as to guarantee that every venireman not struck will be chosen. Rule 24(b) says nothing about the force of the challenges, nothing about the permitted size of the venire, nothing about any relationship between the size of the venire and the number of challenges. No other rule or statute addresses these subjects or confers the right the majority manufactures.

The majority believes that the right of peremptory challenges extends beyond the statutory entitlement set forth in Rule 24(b). Its references to a "dilution" imply that the right also guarantees an extraordinary measure of influence in the exclusion of qualified venire members, and its requirement of a minimum venire reflects an assumption that the challenges must offer defendants the maximum influence possible for the given allotment of strikes. The

majority seeks to base this assumption on authority that ensures a "full" exercise of the right to peremptory challenges. *Ante* at 734. The cases, however, do not support that interpretation.

*Pointer v. United States*, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894), the leading Supreme Court case on the "struck jury" system, directly refutes the majority's premise that the right to a specific number of peremptory challenges implies a right to the greatest possible power of exclusion. As in *Lewis v. United States*, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), the trial court required the defendant to exercise his twenty peremptory challenges without knowing which venire members the prosecution would strike. The effect of this procedure was, by the logic of today's majority, a "dilution" of the statutory right to peremptory challenges: the defendant faced the prospect of exhausting strikes on venire members who, even without the defendant's challenge, would not have become jurors. *Cf. ante* at 733. The defendant would have enjoyed an "undiluted" influence if the prosecution had first used its challenges, and some jurisdictions did require or suggest that the prosecution strike first. *Pointer v. United States*, 151 U.S. at 410, 14 S.Ct. at 415. But the Supreme Court held unanimously that the contested procedure was not "in derogation of the right of peremptory challenge belonging to the accused" because the defendant "was given, by the statute, the right of peremptorily challenging twenty jurors. That right was accorded to him." *Id.* at 411, 14 S.Ct. at 416; *see also id.* at 412, 14 S.Ct. at 416 ("He was only entitled, of right, to strike the names of twenty from the list of impartial jurymen furnished him by the court."). The same analysis applies to the current Fed.R. Crim.P. 24(b). *See United States v. Roe*, 670 F.2d 956, 961 (11th Cir.), *cert. denied*, 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982) (collecting cases).

The cases involving the "jury box" method of selection also demonstrate that the trial court may adopt a procedure that sig-

nificantly limits the relative value of the challenges. Under this system, the last peremptory strike is exercised before the last replacement is known. If the parties use all of their challenges, "each side must accept at least one juror whom he has not had an opportunity to challenge." *United States v. Blouin,* 666 F.2d 796, 798 (2nd Cir.1981). Moreover, trial courts may and do vary the "jury box" system in ways that further restrict the defendant's entitlement. *Id.* at 799; *see also St. Clair v. United States,* 154 U.S. 134, 147–48, 14 S.Ct. 1002, 1007–08, 38 L.Ed. 936 (1894); *United States v. Pimentel,* 654 F.2d 538, 540–41 (9th Cir.1981); *United States v. Anderson,* 562 F.2d 394, 396–97 (6th Cir.1977); *United States v. Mackey,* 345 F.2d 499, 501–03 (7th Cir.), *cert. denied,* 382 U.S. 824, 86 S.Ct. 54, 15 L.Ed.2d 69 (1965). The unifying lesson of these diverse practices is that a defendant "cannot succeed in his claim simply by showing that he could, under some procedure, have made more effective use of his peremptories." *United States v. Blouin,* 666 F.2d at 798. By relying on the observation that "the right to a given number of peremptory challenges becomes less and less effective as the list of potential jurors against which the challenges must be exercised grows larger," *ante* at 733, the majority ignores that lesson and a substantial body of case law.

## II.

The majority opinion also portends an unfortunate shift of power in jury selection toward appellate forums. The majority substitutes appellate fiat for trial flexibility in an area where district judges perform the daily duties of administration and where diversity and experimentation have long been permitted and encouraged. Indeed, as the extraordinary variety both of "jury box" and "struck jury" systems dem-

onstrate, *see United States v. Blouin,* 666 F.2d at 797–8, trial courts have been forums where different theories of selection have held sway. Rule 24(b) accommodated this variety by refusing to prescribe a particular procedure. Appellate judges ought likewise to resist the temptation to impose their own preferences upon this welcome diversity of practice and recognize that "the mode of designating and empanelling jurors for the trial of cases in the courts of the United States is within the control of those courts, subject only to the restrictions Congress has prescribed and, also, to such limitations as are recognized by the settled principles of criminal law to be essential in securing impartial juries for the trial of offenses." *Pointer v. United States,* 151 U.S. at 407–08, 14 S.Ct. at 414; *see also Lewis v. United States,* 146 U.S. at 379, 13 S.Ct. at 139; *St. Clair v. United States,* 154 U.S. at 147–48, 14 S.Ct. at 1007–08.[2] The majority does not acknowledge this flexibility entrusted to the district court. Nor does the majority consider the possible explanations for the manner in which this district court exercised its discretion.

A large venire improves the trial process because it enhances the likelihood that the jury will include a fair cross-section of the community. *See Taylor v. Louisiana,* 419 U.S. 522, 528, 95 S.Ct. 692, 696, 42 L.Ed.2d 690 (1975) ("the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial"); *see also* 28 U.S.C. § 1861. The Supreme Court has noted that a small jury panel is unlikely to allow adequate minority participation. *Ballew v. Georgia,* 435 U.S. 223, 236–37, 98 S.Ct. 1029, 1037, 55 L.Ed.2d 234 (1978). "Further reduction in size will erect additional barriers to representation." *Id.* at 237, 98 S.Ct. at 1037.

**2.** The limitations of trial court discretion suggested by *Pointer v. United States* do not apply here. The defendants received all of the challenges prescribed by Congress. They were not forced to use their strikes to secure a qualified jury and do not argue now that any juror should

have been excused for cause. *Cf. United States v. Rucker,* 557 F.2d 1046 (4th Cir.1977). Nor do they argue that the district court violated the prior commitment of any local rule. *Cf. United States v. Sams,* 470 F.2d 751, 752 (5th Cir.1972).

The same principles apply to the size of the venire. If a minority comprises 10% of the population from which the venire is drawn, venires with thirty members are more than twenty times more likely to include no members of that minority than venires with sixty members. *See* F. Mosteller, R. Rourke & G. Thomas, *Probability with Statistical Applications* (2nd ed.) at 138–39. The difference is not a matter of constitutional right; the venire need only be random, and a venire of thirty would have been acceptable in this case. But the district court's procedure promoted constitutional values that remain important after the minimum standard has been satisfied. The right to exercise peremptory challenges must be accommodated to conflicting constitutional rights, *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 1724, 90 L.Ed.2d 69 (1986). Any holding that accords defendants an exaggerated entitlement to influence the selection of their jury and downplays the value to criminal justice of a minority presence on trial juries is regrettable.

### III.

The selection among qualified potential jurors is an incident of trial in which the district court enjoys wide discretion. The defendant's right of peremptory challenge does not require a minimum venire, and the valid preference for a representative jury might lead the trial court toward a large panel of candidates. The majority today disregards these considerations and forsakes a fair process for the imposition of a more familiar one. Its dictate is not necessary, and its application here is not wise.

I would affirm the judgment of the district court.