953 F.2d 640
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cecil Edward JACKSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Orrin Lamar JACKSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eric LaMount WHITENER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio Franklin CUNNINGHAM, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary Lewis DAVIS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darrin Bernard ROSEBORO, Defendant-Appellant.
 Nos. 90-5918, 90-5919, 90-5920, 90-5921, 90-5922 and 90-5923.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 29, 1991.
Decided Jan. 14, 1992.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Charlotte, No. CR-90-85-C, Robert D. Potter, District Judge.
 Argued: Dale Stuart Morrison, Morrison & Peniston, David Ross Lange, Rankin, Merryman, Dickinson, Rawls & Ledford, Lawrence Wilson Hewitt, James, McElroy & Diehl, P.A., Jesse James Waldon, Jr., Kenneth P. Andersen, for appellants; Robert J. Conrad, Jr., Assistant United States Attorney, Charlotte, N.C., for appellee.
 On Brief: Harold Johnson Bender, Bender & Matus, Charlotte, N.C., for appellants; Thomas J. Ashcraft, United States Attorney, Charlotte, North Carolina; Thomas E. Booth, Criminal Division, United States Department of Justice, Washington, D.C., for appellee.
 W.D.N.C.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before ERVIN, Chief Judge, LUTTIG, Circuit Judge, and JANE A. RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Defendants were convicted in the Western District of North Carolina of conspiring to distribute cocaine base and various other drug and firearm offenses. They appeal their convictions on a number of grounds. We affirm in part, reverse in part, and remand the case to the district court.
 
 I.
 
 2
 The defendants belonged to a violent drug trafficking enterprise that sold powder and then crack cocaine from several locations in Charlotte, North Carolina from November 1988 to March 1990. Cecil Jackson was the leader of the organization and Whitener was his chief lieutenant. Members of the gang engaged in numerous shootings against members of rival drug gangs and dealers who owed money to the enterprise. The Government's chief witness, Brian Mack, was a member of the organization who was initially indicted with the other defendants and subsequently negotiated a plea agreement in return for his cooperation in the prosecution of the remaining defendants.
 
 
 3
 The indictment against the defendants was issued June 7, 1990. A jury trial was held in Charlotte from October 2, 1990 until October 12, 1990. The jury returned guilty verdicts on nearly all counts of the indictment. All defendants were convicted of conspiracy to distribute cocaine base, 21 U.S.C. § 846. Additionally, Cecil Jackson was convicted of participation in a continuing criminal enterprise ("CCE"), 21 U.S.C. § 848; possession with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1); and 13 counts of carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c). Eric Whitener was convicted of participation in a CCE; possession with intent to distribute cocaine base; and 12 counts of carrying a firearm in relation to a drug offense. Antonio Cunningham was convicted of three counts of possession with intent to distribute or distribution of cocaine base; 9 counts of carrying a firearm in relation to a drug offense; and arson, 18 U.S.C. § 844(h). Orrin Jackson was convicted of possession with intent to distribute cocaine base and 12 counts of carrying a firearm in relation to a drug offense. Darrin Roseboro was convicted of 5 counts and Gary Davis was convicted of 3 counts of carrying a firearm in relation to a drug offense.
 
 
 4
 Defendants were sentenced on November 26, 1990. Cecil Jackson received life imprisonment plus a consecutive term of 145 years, a $10,000 fine, and supervised release for five years. Whitener received life plus 105 years, a $10,000 fine, and supervised release for five years. Cunningham received 100 years' imprisonment, a $10,000 fine, and ten years' supervised release. Orrin Jackson was sentenced to 98 years and 4 months, a $10,000 fine, and supervised release for five years. Davis received 55 years, a $10,000 fine, and five years' supervised release. Roseboro was sentenced to 35 years' imprisonment, a $5,000 fine, and supervised release for five years. This appeal followed.
 
 II.
 
 5
 Defendants Cecil Jackson and Whitener make several arguments with regard to their conviction under 21 U.S.C. § 848, participation in a CCE.[1] First, they argue that the trial court improperly instructed the jury regarding the elements of the offense. Specifically, they challenge the trial court's instructions regarding the requirement that a person engaging in a CCE occupy "a position of organizer, a supervisory position, or any other position of management." 21 U.S.C. § 848. According to the defendants, the court erred in instructing the jury, as part of the explanation of this provision, that it was not necessary "that the Defendant was actually able to control those whom he organized, supervised or managed." While it is true that this court has found that proof of a supervisory or managerial relationship (as opposed to that of organizer) "requires a showing of some degree of control," United States v. Butler, 885 F.2d 195, 201 (4th Cir.1989), the trial court's instruction was not sufficiently misleading to merit reversal of the convictions.
 
 
 6
 As the defendants concede, the terms organizer, supervisor, and manager have readily ascertainable plain meanings, which the jury was capable of understanding and applying. Moreover, when read in context, the quoted instructions of the trial judge attempt to convey the proper idea that a supervisor or manager need not exercise direct control over other persons, but may exercise authority through an intermediary or in conjunction with another individual.[2] Although the actual language of the instruction was technically at variance with the Butler decision, the error does not rise to the level of egregiousness which would warrant reversal, particularly in the absence of a contemporaneous objection by the defendants' trial counsel.
 
 
 7
 Contrary to the defendants' assertions, the trial court had no obligation to define the term "in concert" included in the statutory language, as the term has been accorded by the courts its ordinary and common meaning. See Jeffers v. United States, 432 U.S. 137, 148-149 (1977). A court has no general duty to define words of common understanding and meaning. See, e.g., United States v. Chenault, 844 F.2d 1124, 1131 (5th Cir.1988).
 
 
 8
 Likewise, the defendants are mistaken in arguing that the trial court should have cautioned the jury that drug offenses associated with the conspiracy to distribute drugs charge under 21 U.S.C. § 846 could not contribute to the "continuing series of violations" necessary to prove participation in a CCE. The case they cite to support their position, United States v. Lurz, 666 F.2d 69 (4th Cir.1981), cert. denied, 459 U.S. 843 (1982), was explicitly overruled on this issue by United States v. Ricks, 802 F.2d 731, 737 (4th Cir.) (en banc) ("[T]he government may rely on a § 846 violation to establish a § 848 offense...."), cert. denied, 479 U.S. 1009 (1986).
 
 
 9
 Defendants Cecil Jackson and Whitener also argue that there was not sufficient evidence to convict them of engaging in a CCE. Specifically, they contend that the Government did not prove the requisite "continuing series of violations." As mentioned above, the defendants' position that evidence relating to the conspiracy charge cannot be used to prove participation in a CCE has been explicitly rejected by the Ricks decision. 802 F.2d at 737. Testimony relating to the conspiracy showed that both Jackson and Whitener committed numerous drug offenses during the course of the conspiracy. Hence, there was ample evidence for the jury to find that Jackson and Whitener engaged in a "continuing series of violations" of the substance control provisions.
 
 
 10
 Whitener also argues that there was not sufficient evidence to find that he occupied a supervisory role in the enterprise or that he derived substantial income from it. This court will sustain a judgment based on a jury verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision. E.g., United States v. Barnes, 747 F.2d 246, 249 (4th Cir.1984). In this case, there was testimony that Whitener supervised street dealers, recruited new dealers, and, upon Jackson's arrest, assumed command of the operation, directing the dealers to continue selling crack cocaine. As to the substantial income requirement, there was testimony that Whitener received $3000-$5000 of cocaine per week for resale over a five month period. In each case, there is more than sufficient evidence for the jury to have found that Whitener had met the statutory requirements for involvement in a CCE.
 
 
 11
 Finally, Cecil Jackson and Whitener argue that the simultaneous prosecution for both the conspiracy charges and the CCE charge impermissibly violated the Double Jeopardy Clause of the United States Constitution. To the extent they argue that it was improper for the Government to bring both charges in the same proceeding, their position has been resoundingly rejected by the courts. Garrett v. United States, 471 U.S. 773 (1985). To the extent, however, that they argue that they should not have been convicted on both the conspiracy and the CCE charges, their argument is, as the Government concedes, correct. Butler, 885 F.2d at 202 ("A defendant convicted under § 848 may not also be convicted for any predicate conspiracy charges proved as elements of the § 848 offense."). Accordingly we remand the case to the trial court with instructions to vacate Cecil Jackson's and Whitener's § 846 conspiracy convictions.
 
 III.
 
 12
 Next, the defendants argue that the trial court committed prejudicial error by failing to require the Government to produce all Jencks Act material. The Jencks Act, 18 U.S.C. § 3500, requires the Government to produce to the defendants any prior statement of a Government witness in possession of the United States which relates to the witness' direct testimony. The defendants point to several instances in the record in which Government witnesses refer to interviews with Government investigators which the witnesses believed were either tape recorded or memorialized by the investigator's notes and for which the defendants did not receive copies or transcripts. The Government counters with the assertion that it has provided all material in its possession, including the transcripts of four lengthy interviews with the primary witness, Brian Mack, and the transcript of his grand jury testimony.
 
 
 13
 An apparent explanation for the "missing" interviews is that at least some of the statements requested by the defendants had been initially provided to North Carolina state investigators. Some courts have held that, when there has been close cooperation between federal and state prosecutors, statements given to state officials qualify under the Jencks Act. United States v. Heath, 580 F.2d 1011, 1018-19 (10th Cir.1978), cert. denied, 439 U.S. 1075 (1979); contra United States v. Molt, 772 F.2d 366, 371 (7th Cir.1985), cert. denied, 475 U.S. 1081 (1986). However, no court has gone so far as to say that a violation of the Jencks Act occurs when, as in the present case, the federal prosecutor has had no access to any such statements taken by state investigators and apparently no reason to believe that they even exist.
 
 
 14
 The existence of Jencks Act material not produced by the Government is a factual determination to be made by the trial court. See United States v. Williams, 604 F.2d 1102, 1116 (8th Cir.1979). We will overturn a trial court's factual findings only if clearly erroneous. In this case, the trial judge accepted the representation of the Government that no such material was in the United States' possession. While we are troubled by the alacrity with which the trial court accepted the Government's representation, and would be more comfortable had the trial court taken minimal steps to verify the Government's assertion, we cannot, on the record before us, find that the trial court's ruling was clearly erroneous.
 
 IV.
 
 15
 Defendants also argue that the Government did not meet its burden in Counts 4-5, 14-16, 19, 24-26, 28-29, and 31-35 of the indictment, charging violations of 18 U.S.C. § 924(c)(1), possession of a firearm in relation to a drug trafficking crime. Specifically, the defendants argue that by using the Count 1 conspiracy charge as the predicate offense for the firearm possession charges, the Government absolved itself of the necessity of proving that the firearms were used in relation to the offense, in effect converting any firearm possession by the defendants during the course of the 16 month conspiracy into a § 924(c)(1) violation.
 
 
 16
 This argument lacks merit. A charge of conspiracy under 21 U.S.C. § 846 is a proper predicate for a § 924(c) offense. See, e.g., United States v. Meggett, 875 F.2d 24, 27 (2d Cir.), cert. denied, 493 U.S. 858 (1989); United States v. Diaz, 864 F.2d 544, 547-48 (7th Cir.1988), cert. denied, 490 U.S. 1070 (1989). Furthermore, the language of section 924(c)(1) requires that the firearm be possessed "during and in relation to" the predicate offense. The trial judge properly instructed the jury on this element, insuring that the defendants would not be convicted, as they now contend, on mere possession. The record is clear that there was sufficient evidence in each case for a reasonable jury to conclude that the firearm was possessed "in relation to" the drug conspiracy.
 
 
 17
 Defendant Cunningham specifically objects to his conviction on Count 5 of the indictment, charging him and four of his co-conspirators with violation of § 924(c)(1) on the basis of a March 25, 1989, shooting. He argues that there was no testimony placing him at the scene of the incident and, thus, that he should not have been included in the charge. However, the Government correctly relies on the doctrine established by Pinkerton v. United States, 328 U.S. 640 (1946), that a conspirator is liable for the substantive offenses committed by his co-conspirators in furtherance of the conspiracy. The evidence establishes that Cunningham was a participant in the drug conspiracy and that it was a relatively common and completely foreseeable practice for members of the conspiracy to use firearms against dealers who owed money to the organization. Thus, it was proper for the trial court to allow the jury to consider the charge against Cunningham. The fact that other co-conspirators were not included in the charge is immaterial. As long as the decision is not based on constitutionally impermissible grounds, and there is no allegation that it was, the choice of whom to charge generally rests entirely in the discretion of the prosecutor and is an inappropriate subject for judicial review. Wayte v. United States, 470 U.S. 598, 607 (1985).
 
 V.
 
 18
 Defendants also attack the validity of their sentences under the Sentencing Guidelines. They contend that the trial court was in error in attributing 6 kilograms of cocaine base to the conspiracy when calculating the magnitude of the enterprise as required by the Guidelines. The 6 kilogram figure caused the offense to be classified under U.S.S.G. § 2D1.1(c) as a base offense level 40 offense, which requires involvement of 5-50 kilograms of cocaine base. Defendants argue that the testimony supports a figure of less than 5 kilograms, which would result in a base offense level of 38.
 
 
 19
 The trial court's approximation of the quantity of drugs involved in a drug conspiracy is a factual determination that will be overturned only if clearly erroneous. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990). The Government must prove the amount involved by a preponderance of the evidence. Id. In this case, the drug quantity of the conspiracy was determined by aggregating the weekly sales figures for the indicted members of the conspiracy. This figure was then multiplied by 60, a conservative estimate of the number of weeks that the conspiracy was in existence, to arrive at a total quantity approximation for the conspiracy.
 
 
 20
 Defendants argue that the resulting figure was inaccurate because all the dealers relied upon by the trial court were not selling drugs for each of the weeks the conspiracy was in existence. This argument is unconvincing. In a conspiracy of this extensive membership and duration, it would be impossible to insist that all purchases or sales have precise testimonial support in the record in order to be included in a trial judge's approximation. Instead, in approximating the size of the conspiracy, the trial court correctly relied upon the most concrete figures available from the trial testimony. In this case, the most reliable quantitative evidence was the weekly sales totals of the individual dealers. The aggregate figure calculated by the judge was a proxy, based on the best evidence available to the court, for the size of the entire conspiracy. Thus, although the number was based on the sales figures of individual dealers in the conspiracy, the fact that such dealers entered or left the conspiracy during its 60 week duration is irrelevant to the validity of the aggregate figure. For this reason, we decline to find the trial court's approximation of the drug quantity clearly erroneous. See United States v. Reyes, 930 F.2d 310 (3d Cir.1991) (duration of conspiracy and additional evidence of extent of production is proper basis for determination of drug quantity).
 
 
 21
 Defendant Davis argues that he should not be held responsible for the entire amount of drugs trafficked by the conspiracy because he was only a member of the conspiracy for a limited period of time. This position is inconsistent with the law. See, e.g., U.S.S.G. § 1B1.3. comment. (n. 1) (conspirator held accountable for "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant"); United States v. Blackmon, 839 F.2d 900 (2d Cir.1988) (conspirator liable for acts committed in furtherance of conspiracy prior to his entry into the conspiracy). Thus, it was not an abuse of discretion for the trial court to hold Davis accountable for the entire quantity of drugs trafficked by the conspiracy.
 
 VI.
 
 22
 Defendants make numerous other arguments with regard to evidentiary rulings and sentencing by the district court and conduct by the prosecution. Upon a thorough review of the record in relation to these matters, we find no error. In conclusion, we reverse the convictions of defendants Cecil Jackson and Whitener on the drug conspiracy count as duplicative of their convictions on the CCE counts. We affirm the defendants' convictions in all other respects. We remand the case to the district court for proceedings in conformance with this opinion.
 
 
 23
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 21 U.S.C. § 848(b) provides:
 a person is engaged in a continuing criminal enterprise if--
 (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
 (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter--
 (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
 (B) from which such person obtains substantial income or resources.
 
 
 [2]
 The trial court's complete instruction on the supervisory element stated:
 The term organizer, supervisor or manager means that the Defendant that you are considering was more than a fellow worker, and that the Defendant you are considering either organized or directed the activities of five or more other persons whether or not the Defendant was the only organizer or supervisor. That is, it is not necessary the Government prove that the Defendant had sole, that is by himself, actual personal control or contact with each of the five or more other persons, nor that the Defendant was actually able to control those whom he organized, supervised or managed.