UNITED STATES of America,
Plaintiff-Appellee,

v.

Jacques BLOUIN, Defendant-Appellant.

No. 109, Docket 81–1029.

United States Court of Appeals,
Second Circuit.

Argued Sept. 21, 1981.

Decided Dec. 23, 1981.

David Rath, Hinesburg, Vt. (Roger E. Kohn and Kohn & Rath, Hinesburg, Vt., on the brief), for defendant-appellant.

Sheila M. Ware, Asst. U. S. Atty., Rutland, Vt. (Jerome F. O'Neill, U. S. Atty., Rutland, Vt., on the brief), for plaintiff-appellee.

Before NEWMAN and KEARSE, Circuit Judges, and DALY,* District Judge.

NEWMAN, Circuit Judge:

This appeal concerns primarily the procedure for exercising peremptory challenges in selecting a jury to try a criminal case. Jacques Blouin appeals from a judgment of the District Court for the District of Vermont (Albert W. Coffrin, Judge) convicting him of bank robbery and conspiracy, 18 U.S.C. §§ 2113(a) and 371. We conclude that the jury selection procedures did not deny Blouin any protected right and affirm his conviction.

Peremptory challenges are generally exercised under either of two basic approaches. Under what might be called the "jury box" system, twelve members of the array are selected by lot to enter the jury box; counsel for each side then exercise challenges for cause and their allotted number of peremptory challenges, in some prescribed pattern of alternation, against those seated in the jury box and against those drawn to replace any of the first twelve who have been challenged. When both sides have either used or waived their allotted challenges, the twelve members of the venire then in the jury box become the petit jury. Under the "struck jury" system, an initial panel is drawn by lot from those members of the array who have not been challenged and excused for cause; the size

* The Honorable T. F. Gilroy Daly of the United States District Court for the District of Connecticut, sitting by designation.

of this initial panel equals the total of the number of petit jurors who will hear the case (twelve in a federal criminal trial), plus the combined number of peremptories allowed to both sides (normally sixteen in federal felony trials, Fed.R.Crim.P. 24(b)). Counsel for each side then exercise their peremptory challenges, usually on an alternating basis, against the initial panel until they exhaust their allotted number and are left with a petit jury of twelve. Under either system, procedural details vary according to local practice.[1]

The District of Vermont uses the "jury box" system. In Blouin's case, Judge Coffrin followed his usual procedure in felony cases. He divided the exercise of peremptory challenges into five rounds. The Government was allotted one of its six challenges in each of the first four rounds and two challenges in the fifth round. Blouin was allotted two of his ten challenges in each of the five rounds. The Government challenged first in rounds one, three, and five; the defendant challenged first in rounds two and four. Replacements for those challenged during a round were not selected until the completion of the round.

It is this last aspect of Judge Coffrin's procedure that Blouin challenges. In his case, the jury box contained twelve members of the array at the start of the fifth and final round. After the Government waived its last two challenges, Blouin exercised his ninth challenge. He then requested that a replacement be drawn before he was required to exercise his tenth and final challenge against one of the eleven persons remaining in the jury box. This request was denied. Blouin then exercised his last challenge, whereupon two members of the

array were chosen to replace his ninth and tenth challenges and complete the jury of twelve. Blouin contends that he was unduly restricted in his exercise of his tenth peremptory challenge by not knowing, before he used that challenge, the identity of the member of the array who would replace his ninth challenge.

A criminal defendant's right to challenge some prospective jurors without cause is "one of the most important of the rights secured to the accused." *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894). Although not a right protected directly by the Constitution, *see Swain. v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965); *Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 29, 63 L.Ed. 1154 (1919), it nevertheless is considered essential to and inherent in the Anglo-American tradition of trial by jury, *see Swain v. Alabama, supra*, at 219–21, 85 S.Ct. at 835–836; *Hayes v. Missouri*, 120 U.S. 68, 70, 7 S.Ct. 350, 351, 30 L.Ed. 578 (1887); 4 W. Blackstone, *Commentaries* \*353.

The general standard for measuring the acceptability of procedures through which peremptory challenges are exercised was articulated in *Pointer v. United States, supra*, at 408, 14 S.Ct. at 414. "Any system for the empanelling of a jury that pre[v]ents or embarrasses the full, unrestricted exercise by the accused of [his right to challenge peremptorily] must be condemned." Within those confines, however, trial courts retain a broad discretion to determine the way peremptory challenges will be exercised. *See United States v. Turner*, 558 F.2d 535, 538 (9th Cir. 1977); *United States v. Keegan*, 141 F.2d 248, 255 (2d Cir.

---

1. For example, with the "struck jury" system, one variation is to eliminate rounds and require both sides to notify the clerk simultaneously of all members of the initial panel to be challenged. *See Pointer v. United States*, 151 U.S. 396, 409, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894); *Hanson v. United States*, 271 F.2d 791, 793 (9th Cir. 1959). With the "jury box" system, most judges divide the exercise of peremptory challenges into six rounds, allotting the Government one challenge in each round, and allotting the defendant two challenges in each of the

first four rounds and one challenge in each of the last two rounds. Some judges permit challenged jurors to be replaced within a round. Another variation permits each side to elect how many of its allotted challenges it will use in the initial round, but then permits subsequent challenges to be made only against those who have replaced jurors previously challenged. *See generally 3 American Bar Association, Standard for Criminal Justice* 15–67 to 15–70 (2d ed. 1980).

1944), *rev'd on other grounds*, 325 U.S. 478, 65 S.Ct. 1203, 89 L.Ed. 1745 (1945). In federal criminal trials, Rule 24(b) specifies the number of peremptories allotted to both the accused and the prosecution, but the rule prescribes no particular method for their use. Within the Second Circuit, both the "jury box" and the "struck jury" methods are used.[2]

The goal of the "jury box" system is to fill the box with twelve acceptable jurors, and the system is indifferent whether the parties use all their challenges before acquiescing in a panel, or waive all challenges and accept the first twelve called. The goal of the "struck jury" system is to whittle down an initially selected group of normally twenty-eight candidates (twelve jurors plus sixteen challenges) to twelve survivors, and it therefore builds in a preference for the parties' exercising all their allotted challenges.[3] This difference in procedure highlights the different outlooks of the two systems. The "jury box" system tends to focus the parties' attention on one member of the venire at a time, as he or she is seated in the box, and prompts the parties to ask, "Is this juror acceptable?" The "struck jury" system, by contrast, emphasizes the overall complexion of the panel and suggests the very different question, "Which twelve of these twenty-eight will be most favorable to my side?"

By permitting full comparative choice among a panel of twenty-eight prospective jurors, the "struck jury" system lets the parties make the most effective use of their challenges, in the sense that through their choices they are able to determine from the initial panel not only who will not serve but also who will serve as the petit jury. It is far from clear, however, that the right to challenge peremptorily should necessarily imply a right to shape a jury's profile to such an extent. The emphasis on selecting a panel rather than rejecting individuals might, for example, increase the opportunity to shape a jury along racial or other class lines. *Cf.* J. Van Dyke, *Jury Selection Procedures* 146–47, 152–60 (1977).

The "jury box" system does not afford the opportunity, or the danger, of full comparative choice, for the parties do not know ahead of time who the replacement for a challenged juror will be. While avoiding opportunity for an enhanced and perhaps undue impact upon the profile of the petit jury, this system has the inherent disadvantage that each side must accept at least one juror whom he has not had an opportunity to challenge. Whoever goes second in the final round will have used his last challenge before knowing the identity of the juror who replaces that last challenge. And if each side has only one challenge in the final round, the side going first in the final round will have used his last challenge before knowing the identities of both the juror who replaces his final challenge and the juror who replaces his adversary's final challenge.[4]

We note these differences in operation and outcome of the two systems in order to emphasize that Blouin cannot succeed in his claim simply by showing that he could, under some procedure, have made more effective use of his peremptories. If that were

---

**2.** The District of Vermont uses variations of the "jury box" system, as Judge Coffrin did in Blouin's trial. The District of Connecticut tends to use the "struck jury" system. In New York the Northern District uses the "jury box" system, the Western District uses both, and in the Southern and Eastern Districts, most judges use the "jury box" system, but a few use the "struck jury" system.

**3.** If some of the allotted peremptories are waived, the names remaining from the initial panel of twenty-eight are then placed back into the jury wheel, and from this group twelve names are drawn.

**4.** This disadvantage can be magnified by the method of allotting challenges among rounds and by omitting replacements within a round. For example, under Judge Coffrin's system, each side has two challenges in the final round, and no replacements are permitted between rounds. Had the Government used its final two challenges instead of waiving them, both the Government and Blouin would have used their last two challenges without knowing the identity of four jurors (the two who replaced the Government's final two challenges and the two who replaced the defendant's final two challenges).

the test, the "struck jury" system would be required, for it affords a more "effective" opportunity for the use of peremptories than the "jury box" system. The "struck jury" system, however, is not required. Indeed, on balance it is not necessarily preferable to the "jury box" system; it is merely different. To test Blouin's claim, we must apply standards developed within the context of the "jury box" system to see if the District Court's procedures "prevent[ed] or embarrasse[d] the full, unrestricted exercise" of Blouin's allotted peremptories.

Two prior decisions of this Court frame the context within which we consider Blouin's claim. In *United States v. Keegan, supra,* the defendants and the Government were each allotted one challenge in the last round, with the Government exercising the final challenge. The defendants unsuccessfully sought to withhold their last challenge until after the Government exercised its last challenge, so as to be able to consider the replacement juror as a target for their last challenge. This Court affirmed, concluding that defendants had been "merely required to exercise their challenge at a particular time." *Id.* at 255. More recently, in *Carr v. Watts,* 597 F.2d 830 (2d Cir. 1979), the trial court in a civil case tried to a jury of six required both the plaintiff and the defendant to exercise all three of their challenges before replacements were drawn. The plaintiff, who challenged first, sought to withhold at least the last of his three allotted challenges until he saw the identity of the two members of the array chosen to replace the two persons he had already challenged. The trial court refused, and this Court reversed, without any mention of *Keegan,* even though the trial judge's procedure could have been viewed simply as a requirement of exercising challenges at a particular time.

*Keegan* can be read as assuring a litigant only the opportunity to use all of his allotted number of challenges. *Carr* makes clear, however, that in some circumstances the procedure by which that opportunity is made available can be unduly restrictive, even though the litigant is permitted to use all of his challenges. In *Carr,* because challenges were not exercised in rounds, the plaintiff was required to use all of his challenges before knowing the identity of half of the six eventual members of the petit jury—the replacements for the two he had challenged, plus the replacement for the one challenge subsequently exercised by the defendant.[5] *Carr*'s lesson is that while the law does not guarantee the full comparative choice of the "struck jury" system, it does require that, when the "jury box" system is used, a litigant be given some reasonable opportunity to challenge some replacements. The *Carr* procedure failed because it did not permit use of challenges in rounds and thereby did not afford a reasonable opportunity to challenge any replacements.

In light of *Keegan* and *Carr,* we see no basis for concluding that Judge Coffrin's procedure denied Blouin any protected right. Blouin was obliged to exercise his last challenge before knowing the identity of two members of the twelve-person jury— the persons who replaced his ninth and tenth challenges. Of course, in every case in which an alternating system of rounds is used, whoever has the last challenge will exercise it without knowing the identity of one member of the jury—the person who replaces the juror removed by that last challenge. Blouin apparently accepts that consequence, but contends that his ninth challenge should have been replaced before he exercised his tenth challenge, so that the number of jurors eventually empanelled whom he had not seen would have been only one instead of two. But Blouin had as full an opportunity to challenge as Keegan, who also was obliged to exercise his last challenge before knowing the identity of two jurors—the person who replaced his last challenge and the person who replaced the Government's last challenge. Moreover, the system of rounds that Judge Coffrin used, like the system in *Keegan,* protected Blouin from anything like the extreme

**5.** The *Carr* procedure had the potential for requiring exercise of challenges before knowing the identity of all six of the eventual jurors: if the plaintiff had challenged three of the first six seated in the jury box, and the defendant then had challenged the other three, the six replacements would have constituted the jury.

impairment suffered by Carr, who was forced to use all of his allotted challenges against a panel that included only half of the eventual members of his jury. As used in Blouin's case, Judge Coffrin's procedure afforded Blouin a reasonable opportunity to challenge replacements and was well within the allowable discretion of a District Court.[6]

We have considered appellant's various challenges to the trial court's evidentiary rulings and conclude that all are without merit.

The judgment of conviction is affirmed.

**6.** We point out, however, that Judge Coffrin's procedure has the potential for restricting the exercise of peremptory challenges to a far more serious extent than occurred in this case. If the Government had used its last two challenges, Blouin would have had to use his last two challenges without knowing the identity of four jurors. *See* footnote 4, *supra*. This potential could be easily reduced by increasing the number of rounds from five to six and permitting replacements after each challenge. Whoever went first in the final round would then use his last challenge without knowing the identity of no more than two jurors, and whoever went last in the final round would use his last challenge without knowing the identity of only the one juror who replaced his last challenge. Even this uncertainty could be eliminated by drawing the names of three members of the venire after the Government used its fifth challenge and the defendant used his ninth challenge. Each side could then use its final challenge while viewing three potential jurors; the one not challenged by either side would become the twelfth juror. We do not suggest that such a variation is required.