**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David CHRISTOFFEL, Defendant–
Appellant.**

**No. 90–10405.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1991.

Decided Dec. 19, 1991.

Robb P. Holms, La Barge & Holmes, Tucson, Ariz., for defendant-appellant.

Joelyn D. Marlowe, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before GOODWIN, NORRIS and THOMPSON, Circuit Judges.

GOODWIN, Circuit Judge:

David Glen Christoffel appeals his conviction and sentencing for possession with intent to distribute, and importation of marijuana. Christoffel raises a number of issues concerning his trial and sentencing. We affirm in part, reverse in part, and remand for resentencing.

On September 12, 1989, U.S. Border Patrol Agents who were patrolling an isolated desert stretch of the U.S.–Mexico border in Arizona spotted a car heading north. The agents determined that the car's speed was excessive given the poor condition of the road. When the agents activated their emergency lights, the driver, appellant David Glen Christoffel, sped up and raced away.

In his attempt to flee, Christoffel led these and other agents through a dramatic chase at speeds of over 100 miles per hour through villages and around various roadblocks. He was finally stopped by an embankment 25 miles from the beginning point of the chase and seized by U.S. Customs Agents. Upon searching his car, the agents discovered 242 pounds of marijuana and $2,620 in twenty dollar bills.

Following his arrest, Christoffel was tried and convicted of possession with intent to distribute, and importation of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii), 952(a), 960(a)(1), (b)(2)(G).

In computing Christoffel's offense level under the sentencing guidelines (USSG), the district court added two levels under § 3C1.1 for Christoffel's high-speed flight from the arresting agents. As well, the court gave Christoffel two criminal history points for two prior drunk driving (DUI) convictions.

On appeal, Christoffel argues that reversible error was committed during jury selection, that his attorney rendered him ineffective assistance of counsel, and that the evidence in the case was insufficient to convict him of importation. Christoffel also argues that the district court erred by including the high speed chase and one of the prior DUI convictions in computing Christoffel's sentence under the sentencing guidelines.

## I. *The Jury Selection Process*

Christoffel argues that the jury selection process employed by the district court restricted his right to intelligently exercise his peremptory challenges. The government's only dispute is with Christoffel's factual account of the process. Even though Christoffel's version is the correct one, we find no error.

In this case, the district court followed the so-called "Arizona" method of jury selection. Under that method, the clerk draws a number of names from the pool of potential jurors. The members of the venire so drawn all undergo voir dire. When a member is excused for cause, a replacement is selected from the courtroom pool. Once all challenges for cause have been made, the prosecutor and the defendant then exercise their peremptory challenges to excuse venire members. So long as the original venire was of the correct size,[1] this system assures that a sufficient number of members will survive the peremptory challenge process to form the jury.

In this case, the district court did not replace the members of the venire who were struck for cause with potential jurors from the pool. Accordingly, after both the government and Christoffel had exercised all of their peremptory challenges for regular jurors, only 11 jurors remained in the box. At that point, the district court ordered another name drawn and a member of the pool was seated on the jury. This juror had not been a candidate for peremptory challenge by either side.[2] At no point did Christoffel attempt to strike the twelfth juror.

Christoffel argues that the district court's failure to make provision to allow him the choice of striking the twelfth juror constituted reversible error. Christoffel relies on *United States v. Springfield*, 829 F.2d 860 (9th Cir.1987). The jury selection process in *Springfield* was similar to the one in this case. After both sides had exercised all of their peremptory challenges, only 11 jurors remained in the box prompting the district court to select a member of the pool to sit on the jury. In that case, however, the district court permitted the defendant to exchange one of his earlier exercised peremptory challenges for a challenge against the twelfth juror. In upholding this decision, this court suggested other methods which the district court also could have employed to alleviate the problem. *Id.* at 864. Christoffel argues that since none of these methods was used in his case, reversible error was committed.

Christoffel's argument fails because he made no attempt to strike the twelfth juror. After the extra juror was seated in *Springfield*, the defendant specifically requested that the court grant him an extra peremptory challenge to strike this juror. No such request was made in this case. Christoffel exercised all ten of his allotted strikes and exhibited no desire to strike the extra juror. Accordingly, this case involves no restriction of Christoffel's right to exercise his peremptory challenges. *United States v. Turner*, 558 F.2d 535, 538 (9th Cir.1977).

---

1. In this case, the district court seated a venire of 31 people. Thirty-one represents the sum of the number of peremptory challenges allowed the prosecution (six for regular jurors plus one for the alternate), the number allowed the defendant (ten regular challenges plus one for the alternate), the number of regular jurors (twelve), and the number of alternates (one).

2. The government's only arguments concerning jury selection are that: (1) the venire originally consisted of 32, and not 31, people; and (2) peremptory challenges were permitted and were exercised against all potential jurors—even those not included in the venire. These contentions are highly improbable and contradicted by the record.

## II. Sufficiency of the Evidence

Christoffel next argues that there was insufficient evidence to support the jury's verdict that he knowingly and intentionally imported marijuana. This court reviews such a challenge to determine "if the evidence, when viewed in the light most favorable to the government, would support a finding by any rational trier of fact that the defendant was guilty of each essential element of the crime charged." *United States v. Pemberton*, 853 F.2d 730, 733 (9th Cir.1988). In importation cases involving large quantities of narcotics, circumstantial evidence may prove knowledge or intent. *United States v. Barbosa*, 906 F.2d 1366 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990).

At trial, the government presented uncontroverted evidence that defendant was spotted in the Arizona desert, 20 yards from an unofficial gate on the U.S.–Mexico border, driving a car rapidly away frcm Mexico, hauling 242 pounds of marijuana—some of it in the back seat. Government agents testified that they could see for up to two miles in every direction. When Christoffel realized that the agents were on his tail, he commenced a dramatic 25–mile flight—the last five of which Christoffel negotiated while one of his rear wheels was rolling on the rim.

The evidence satisfies *Pemberton*.

## III. Sentencing

### A. The Prior DUI Conviction

Christoffel argues that the district court erroneously added one point to his Criminal History Points total for a 1985 Arizona DUI conviction. Christoffel claims that there was no factual basis for this conviction. Christoffel did not raise this issue before the district court. He has not demonstrated that this case falls into one of the narrow exceptions to the rule that we do not consider an issue raised for the first time on appeal. *United States v.*

*Carlton*, 900 F.2d 1346, 1349 (9th Cir.1990). Accordingly, we decline to consider the issue.

### B. Obstruction of Justice

Christoffel also challenges the computation of his sentence on the grounds that the district court erred by counting the high speed chase as "obstruction of justice" under § 3C1.1 of the Sentencing Guidelines. Christoffel does not challenge the government's factual account of the high speed chase. It is uncontroverted that in fleeing, Christoffel endangered the lives of the pursuing agents, the agents at the roadblocks, and the people in the villages he drove through.

We agree with Christoffel that it was error for the district court to enhance his sentence under § 3C1.1. Fleeing from arrest by itself is not covered by § 3C1.1. *United States v. Garcia*, 909 F.2d 389, 392 (9th Cir.1990). Moreover, whether a defendant recklessly endangered others while fleeing bears no logical relation to whether that defendant was obstructing the law enforcement officers who were attempting to apprehend him.[3] We express no opinion on whether the facts of this case would justify an upward departure under *United States v. Lira–Barraza*, 941 F.2d 745 (9th Cir.1991) (en banc). The discretion to depart upward lies with the sentencing judge not this court. Accordingly, we reverse the district court's upward adjustment for obstruction of justice and remand for resentencing.

## IV. Ineffective Assistance of Counsel

Finally, Christoffel argues that he received ineffective assistance of counsel because his attorney failed to: (1) apply for a bond hearing; (2) allow Christoffel to testify; (3) disclose and discuss the presentence report with Christoffel; and (4) move for a mistrial because of alleged errors committed during jury selection.

---

**3.** The Sentencing Guidelines were amended in November 1990 to provide an enhancement of two levels for recklessly endangering others during flight. *See* USSG 3C1.2. However, because the amendment took effect after Christoffel was sentenced, this provision does not apply here.

To succeed on direct appeal with an ineffective assistance of counsel claim, the trial record must prove that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to establish this claim, the defendant must "point to errors or omissions in the record." *United States v. Johnson*, 820 F.2d 1065, 1073 (9th Cir. 1987). For that reason, "[t]he customary procedure for claims of ineffective assistance of counsel in federal criminal trials is by collateral attack on the conviction under 28 U.S.C. § 2255." *Id.* at 1074; *see also United States v. Schmit*, 881 F.2d 608, 614 (9th Cir.1989). This procedure permits the petitioner to present facts not a part of the record in support of his claim. *Id.*

Because Christoffel has offered nothing to establish that the attorney conduct he cites occurred, or that he was prejudiced, we reject his ineffective assistance of counsel claim.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.