8 F.3d 31
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pierre FOUCHE, Defendant-Appellant.
 No. 92-50584.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 1, 1993.
Decided Oct. 7, 1993.
 
 Before: TANG, CANBY, and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Pierre Fouche appeals his convictions for armed bank robbery, being a felon in possession of a firearm, and carrying a firearm during the commission of a crime of violence under 18 U.S.C. §§ 2113(a), (d), 922(g)(1) and 924(a), (c)(1), (e), respectively. We affirm.
 
 DISCUSSION
 
 3
 I. The Trial Court's Failure to Sever the Charge of Felon in Possession of a Firearm.
 
 
 4
 Fouche charges error in the trial court's refusal to sever the charge of felon in possession of a firearm from the bank robbery charge because the evidence in support of the firearm possession charge, a prior conviction for bank robbery, is prejudicial and would have been inadmissable in a trial of the other two charges alone. "A denial of severance will be upheld absent a showing that 'joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever.' " United States v. Kaplan, 895 F.2d 618, 621 (9th Cir.1990) (quoting United States v. Whitworth, 856 F.2d 1268, 1277 (9th Cir.1988), cert. denied, 489 U.S. 1084 (1989)). The defendant has the burden of showing such manifest prejudice that his trial was rendered unfair. United States v. Lewis, 787 F.2d 1318, 1321, amended, 798 F.2d 1250 (9th Cir.1986).
 
 
 5
 We have recognized, however, "that there is 'a high risk of undue prejudice whenever, as in this case, joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible.' " Lewis, 798 F.2d at 1250 (quoting United States v. Daniels, 770 F.2d 1111, 1116 (D.C.Cir.1985)). Nevertheless, we still review the strength of the evidence against the defendant to determine whether undue prejudice exists. Lewis, 787 F.2d at 1322-23; see also United States v. Burgess, 791 F.2d 676, 679 (9th Cir.1986) (denial of motion to sever was not an abuse of discretion because the evidence against the defendant "was neither sparse nor unconvincing").
 
 
 6
 In this case, the strength of the other evidence against Fouche overshadowed the risk of prejudice in failing to sever the charges. Five witnesses, including his codefendant, identified Fouche as the bank robber. A great deal of physical evidence also connected Fouche to the robbery and corroborated the witnesses' identifications of Fouche as the robber.
 
 
 7
 In addition, very little exculpatory evidence was presented to challenge the government's case. The only exculpatory evidence mentioned in Fouche's brief is that two persons in the bank told the police that the robber was white, and Fouche is black. The strength of this evidence was diminished, however, by the facts that the robber was fully clothed, his face was covered by a mask, and he wore white latex gloves that made his hands appear lighter. Moreover, both bank witnesses who saw the robber before he put on the mask testified that he was black. In sum, the other evidence against Fouche was so overwhelming and convincing that joinder of the firearm charge did not unduly prejudice him or deny his right to a fair trial.
 
 
 8
 II. Admission of Testimony Regarding Hollow-Point Bullets
 
 
 9
 Fouche argues that the district court abused its discretion by admitting testimony that the gun carried by the bank robber was loaded with hollow-point bullets.
 
 
 10
 Fouche first asserts that the testimony was irrelevant because the government was not required to prove this fact to obtain a conviction for either armed bank robbery or using and carrying a firearm during a crime of violence. This argument is meritless. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The agents' testimony that the gun was operable and loaded was relevant because the defense attempted to establish that the gun carried by the bank robber was a counterfeit or a replica.
 
 
 11
 Fouche next argues that the testimony that the gun was loaded with hollow-point bullets was unduly prejudicial because these bullets are known to cause greater damage than regular bullets. This argument also fails. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Fed.R.Evid. 403.
 
 
 12
 Unfair prejudice results from an aspect of the evidence other than its tendency to make the existence of a material fact more or less probable, e.g., that aspect of the evidence which makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.
 
 
 13
 United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir.1982) (emphasis in original) (citations omitted). "The district court is given wide latitude in determining the admissibility of evidence under this standard." United States v. Kinslow, 860 F.2d 963, 968 (9th Cir.1988), cert. denied, 493 U.S. 829 (1989).
 
 
 14
 Here, the agents merely described the bullets; they did not testify about the effects such bullets would have if they were fired, nor did the agents compare hollow-point bullets with any other type of bullets. The brief description of the bullets was not likely to provoke an emotional response in the jury wholly apart from its judgment regarding Fouche's guilt or innocence of the offenses charged. Accordingly, the district court did not abuse its discretion by allowing this testimony.
 
 III. Identification of Fouche
 
 15
 Fouche contends that the out-of-court identification procedure employed by the investigating police officers was impermissibly suggestive and tainted the subsequent identification testimony offered at trial. This contention lacks merit.
 
 
 16
 "To determine whether an out-of-court identification procedure is so impermissibly suggestive as to taint subsequent identification testimony in deprivation of the defendant's due process rights, [this court] examine[s] the totality of the surrounding circumstances." United States v. Nash, 946 F.2d 679, 681 (9th Cir.1991) (citing United States v. Bagley, 772 F.2d 482, 492 (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986)).
 
 
 17
 After an evidentiary hearing, the district court ruled that the out-of-court identification procedure was not impermissibly suggestive. The testimony at the hearing revealed that Fouche was apprehended by police officers within an hour after the robbery occurred. He was handcuffed and placed in the back seat of a marked police car. A police officer then drove two of the bank tellers, Linda Mitrovitch and Cynthia Lopez, to the location where Fouche was being detained. The officer admonished the two women not to talk with each other about the robbery, and told them that they should not assume either that the person being detained was in custody or that he was the robbery suspect. Each woman separately viewed Fouche as he sat in the police car; both identified him as the bank robber. This court has held that similar identification procedures are not impermissibly suggestive. See Bagley, 772 F.2d at 492-93; United States v. Kessler, 692 F.2d 584, 585-586 (9th Cir.1982). Fouche has not demonstrated any material differences between the procedure used in this case and those approved in Bagley and Kessler.[1] Accordingly, the district court did not err by admitting the tellers' identification testimony at trial.
 
 IV. Jury Selection Procedure
 
 18
 Fouche argues that the district court's method of jury selection deprived him of the opportunity to use his peremptory challenges intelligently. This argument is not persuasive.
 
 
 19
 The district court's method of jury selection must not unduly restrict the defendant's use of his peremptory challenges. United States v. Turner, 558 F.2d 535, 538 (9th Cir.1977). Nevertheless, "[i]t suffices that the method chosen allows the defendant to make his peremptory challenges without embarrassment and does not intimidate him from exercising them." United States v. Broxton, 926 F.2d 1180, 1182 (D.C.Cir.), cert. denied, 111 S.Ct. 1118 (1991). A defendant cannot prevail on a challenge to the district court's method of jury selection "simply by showing that he could, under some [other] procedure, have made more effective use of his peremptories." United States v. Blouin, 666 F.2d 796, 798 (2d Cir.1981).
 
 
 20
 Here, the jury was selected via a procedure known as the "jury box" method. The district court first granted each side the statutorily-required number of peremptory challenges--six for the government and ten for the defendant. The district court then conducted voir dire of the entire jury venire regarding possible areas of bias or inability to serve on the jury. Three jurors were excused for cause. Eighteen prospective jurors were then randomly selected and placed in the jury box. Each of the eighteen prospective jurors then stated his or her name, area of residence, length of time at that residence, occupations and employers within the last five years, marital status, and, if married, the occupation and employer of the spouse. The district court advised the parties to consider only the first twelve jurors seated, and required the parties to exercise a specified number of peremptory challenges in each of six rounds. Each time a juror was removed by a party, another member of the venire was drawn. The new prospective juror would then provide the personal information supplied by the original eighteen jurors.
 
 
 21
 Fouche challenges this procedure on several grounds. First, he asserts that he did not receive the personal information from the last two prospective jurors placed in the box. This assertion is contradicted by the record; every prospective juror supplied this information before Fouche exercised his last peremptory challenge.
 
 
 22
 Fouche next argues that he was required to exercise his last two peremptory challenges without knowing who would replace the struck jurors. We find no violation of Fouche's rights in such a procedure.
 
 
 23
 In Blouin, the Second Circuit rejected a similar argument. Under the jury box system, "Blouin was obliged to exercise his last challenge before knowing the identiy of two members of the twelve-person jury--the persons who replaced his ninth and tenth challenges." 666 F.2d at 799. The court reasoned that "in every case in which an alternating system of rounds is used, whoever has the last challenge will exercise it without knowing the identity of one member of the jury--the person who replaces the juror removed by that last challenge." Id. Yet, this procedure "afforded Blouin a reasonable opportunity to challenge replacements and was well within the allowable discretion of a District Court." Id. at 800 (footnote omitted). Blouin further explained that the jury box system has the advantage of "tend[ing] to focus the parties' attention on one member of the venire at a time, as he or she is seated in the box, and prompt[ing] the parties to ask, 'Is this juror acceptable?' " Id. at 798. Fouche has not demonstrated that the use of the jury box procedure unduly restricted his exercise of his peremptory challenges or was so unreasonable as to constitute an abuse of discretion.
 
 
 24
 Furthermore, Fouche neither requested any additional peremptory challenges nor exhibited any desire to strike the last two jurors. Accordingly, his challenge to the method of jury selection fails. See United States v. Christoffel, 952 F.2d 1086, 1088 (9th Cir.1991) (defendant challenged the jury selection process because the twelfth juror had not been a candidate for peremptory challenge by either side; this court rejected the challenge because the defendant had exercised all ten of his allotted strikes and did not request an extra peremptory challenge to strike the twelfth juror), cert. denied, 112 S.Ct. 1700 (1992).
 
 CONCLUSION
 
 25
 The district court's judgment is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Fouche asserts that Bagley is distinguishable because Bagley did not wear a mask or carry a gun. Although these factors may bear on the credibility of the witnesses' identifications, they are irrelevant to the question of the validity of the identification procedure itself. Fouche further suggests that Bagley and Kessler are distinguishable because, in those cases, the suspect was transported to the scene of the crime to be viewed by witnesses. Here, in contrast, the witnesses were transported to Fouche. Yet, Fouche fails to explain, and we are unable to discern, the relevance of this distinction