**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

OSBALDO ESPARZA-GONZALEZ,
            *Defendant-Appellant.*

No. 04-10267

D.C. No.
CR-03-00226-HDM

OPINION

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Argued and Submitted
February 14, 2005—San Francisco, California

Filed September 6, 2005

Before: Dorothy W. Nelson, William A. Fletcher, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge D.W. Nelson

12321

## COUNSEL

Cynthia S. Hahn (argued and briefed) and Michael K. Powell (briefed), Assistant Federal Public Defenders, Reno, Nevada, for the defendant-appellant.

Ronald C. Rachow, Assistant United States Attorney, Reno, Nevada, for the plaintiff-appellee.

## OPINION

D.W. NELSON, Circuit Judge:

Osbaldo Esparza-Gonzalez, who is Latino, appeals from his conviction, under 8 U.S.C. § 1326(a), for being an alien unlawfully present in the United States after an earlier removal. Esparza-Gonzalez alleges that two Equal Protection violations under *Batson v. Kentucky*, 476 U.S. 79 (1986), occurred during jury selection and require that his conviction be overturned. In the alternative, Esparza-Gonzalez argues that the district court erred in applying a sixteen-level sentence enhancement pursuant to United States Sentencing Guidelines (USSG) § 2L1.2(b)(1)(A)(I) to his unlawful re-entry conviction based on a prior drug trafficking conviction, which was not presented as evidence to the jury. We hold that for purposes of determining whether a *prima facie* case of a

*Batson* violation has been established, waivers of peremptory strikes in a struck jury system should be treated the same as exercises of peremptory strikes in an alternate system. Accordingly, we reverse in part and remand in part.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 17, 2003, Esparza-Gonzalez was indicted and charged with a violation of 8 U.S.C. § 1326(a) for being an alien found in the United States without permission after a prior removal. Esparza-Gonzalez pled not guilty and was tried by a jury on February 17, 2004.

The district court used what is known as the "struck jury" system to select jurors for Esparza-Gonzalez's trial.[1] Under this system, 32 venirepersons are initially selected, of whom 28 are potential jurors and four are potential alternates. Beginning with the defense, each side exercises its challenges for cause and then its peremptory strikes on an alternating basis. Because Esparza-Gonzalez was charged with a felony, the defense had ten peremptory strikes and the prosecution had six. *See* Fed. R. Crim. P. 24(b)(2). Each side received one additional peremptory strike for the alternate jurors. *See id.* at (c)(4)(A).

After the voir dire, neither side exercised a single strike for cause. If each side had used all its peremptory strikes, only a jury of 12 individuals and two alternates would have remained.[2] The defense exercised all of its ten peremptory strikes, but the prosecution only used one peremptory strike, waiving the remainder. Under the struck jury system, when either side waives a peremptory strike, this results in an excess number

---

[1]The district court referred to the jury selection procedure used as the "modified Arizona system."

[2]If either side had requested and been granted a strike for cause, the ideal number of jurors and alternate jurors would have been reached before each side had exercised all of its peremptory strikes.

of potential jurors, and therefore, the juror with the highest juror number is removed from the jury panel. For this reason, a waiver of a peremptory strike under this system is properly viewed as the effective removal of an identifiable juror. In contrast, when a peremptory strike is waived under other jury selection systems, no juror is removed from the venire and the composition of the panel is left unchanged. Under these systems, it is only when a party exercises a peremptory strike or a strike for cause that the composition of the venire changes and a previously unidentified prospective juror is randomly selected to join the venire.[3]

Of the 28 potential jurors, only three were persons of color, one of whom had a Latino surname. Among the four potential alternates, there was one individual with a Latino surname and no other individual of color. With the one peremptory strike it exercised against the potential jurors, the prosecution removed a white juror. By waiving its second peremptory strike, the prosecution removed the only potential juror with a Latino surname, Ms. Martinez, who was juror number 28.[4] Defense counsel immediately challenged her removal under *Batson*, alleging that the prosecutor waived this strike with the discriminatory intent to remove the sole prospective Latino juror. The district court asked the prosecutor to respond to the challenge, and the prosecutor stated that he was waiving all his remaining strikes.

---

[3]For example, under the "jury box" system 12 prospective jurors are seated and subjected to voir dire. When a party exercises any challenge — peremptory or for cause — a new juror is brought in to replace the excused juror. The jury box system, then, allows less manipulation of the entire composition of the jury than the struck jury system permits. *See* Bettina B. Plevan, *Jury Trial Issues, in Current Developments in Federal Civil Practice*, 706 PLI/Lit 443, 451-52 (2004).

[4]The record does not reveal whether Ms. Martinez is Latina or Native American, which was the subject of speculation by the court. Voir dire revealed that Ms. Martinez works for a Native American tribe and has a Latino surname, which may be her maiden name or could be a name acquired through marriage.

The district court initially found a *Batson* violation with respect to the removal of juror Martinez and ordered the clerk to dismiss the next juror in line, number 27, instead of juror Martinez. When the prosecutor objected, the district court noted that it could "take judicial notice of the fact that [the prosecutor], in many cases, most cases," exercised all or most of his peremptory strikes and therefore that his failure to do so in this case permitted an inference of intentional discrimination.

After more discussion, the district court retreated from its initial finding of intentional discrimination and asked defense counsel whether she had any evidence on "how often the government waived [peremptory] challenges in the past or exercised challenges." Defense counsel replied that during her last illegal re-entry case, another prosecutor from the same office waived a peremptory strike, resulting in the removal of a minority venireperson. The district court then ordered a short recess to research case law on whether waiver of a peremptory strike could constitute a *Batson* violation. When court resumed, the district court ultimately ruled that the defense had failed to establish a *prima facie* case of intentional discrimination. The district court relied on *State v. Paleo*, 22 P.3d 35 (Ariz. 2001), to conclude that the failure to use a peremptory strike, without other evidence of discriminatory intent, cannot constitute a *prima facie* showing.

After the 12 jurors were selected, each side was allowed to exercise a peremptory strike against the four alternate jurors. If each side had used its strike only two alternates would have remained. The same selection rules applied to the selection of the alternates, and when the prosecutor waived his peremptory strike, the only alternate with a Latino surname, Mr. Lopez, was removed. The defense also challenged this removal under *Batson*, and in response the district court asked the prosecutor to explain the only peremptory strike he exercised. (This was the peremptory strike previously exercised against a potential juror.) The prosecutor said he struck that

potential juror because he was divorced, worked in mainte-
nance, and "didn't strike [him] as the type of person that
would be particularly attentive." Defense counsel pointed out
that several of the remaining jurors were divorced and one
worked in maintenance, yet the prosecutor had not used his
remaining five peremptory strikes to remove these potential
jurors. Nevertheless, the district court found that the defense
failed to establish a *prima facie* showing of intentional dis-
crimination. The court did, however, require the record to be
certified so that other judges might determine whether a pat-
tern existed at the U.S. Attorney's office of waiving peremp-
tory strikes in order to unseat jurors of color. The jurors and
alternates empaneled to hear Esparza-Gonzalez's case
included one person of color, who did not have a Latino sur-
name.

The jury found Esparza-Gonzalez guilty of being an alien
present in the United States without permission after a prior
removal under 8 U.S.C. § 1326(a). On April 27, 2004, the dis-
trict court applied USSG § 2L1.2(b)(1)(A)(I) to increase
Esparza-Gonzalez's sentence due to his prior drug trafficking
conviction, for which he was sentenced to over thirteen
months in prison. Based on this enhancement, the district
court sentenced Esparza-Gonzalez to 57 months imprison-
ment, the low-end of the applicable sentencing range and well
under the 10-year statutory maximum set out in 8 U.S.C.
§ 1326(b)(4). Although no proof of his prior conviction was
presented to the jury, Esparza-Gonzalez did not object to the
accuracy or use of this conviction at the time of sentencing.
Without this enhancement, the sentencing range would have
been only four to ten months. *See* USSG ch. 5, pt. A, sentenc-
ing table (2004). Esparza-Gonzalez timely appealed his con-
viction and sentence to this court.

## *STANDARD OF REVIEW*

We review de novo the question of whether a district court
must apply *Batson* to a defendant's claim of intentional racial

discrimination. *See United States v. Alanis*, 335 F.3d 965, 967 & n.1 (9th Cir. 2003). But we review a district court's finding of whether the defendant established a *prima facie* case for racial discrimination only for clear error. *United States v. Steele*, 298 F.3d 906, 910 (9th Cir. 2002). Similarly, we review for clear error the district court's decision on intent to discriminate. *Id.* To reverse under the clear error standard, we must have "a definite and firm conviction that a mistake has been committed." *United States v. Elliott*, 322 F.3d 710, 714 (9th Cir. 2003) (internal quotation and citation omitted).

## DISCUSSION

### I.   The Batson Challenges

#### A.   Waiver of Peremptory Strikes Can Form the Basis of a *Batson* Challenge

[1] In *Batson*, the Supreme Court held that a "[s]tate's privilege to strike individual jurors through peremptory challenges, is subject to the commands of the Equal Protection Clause."[5] 476 U.S. at 89. *Batson* and its progeny established a three-part test for determining whether the exercise of a peremptory strike violates equal protection. First, the challenging party bears the burden of establishing a *prima facie* showing of intentional discrimination. *Id.* at 93-94. If the challenging party satisfies this burden, the burden of production shifts to the party exercising the strike to articulate a race-neutral reason for the strike. *Id.* at 97-98. The race-neutral reason provided does not have to "rise to the level justifying exercise of a challenge for cause," *id.* at 97, nor does the explanation have to be "persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 768 (1995). But the reason

---

[5]This analysis applies in federal criminal cases as well. *See Buckley v. Valeo*, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment."); *United States v. De Gross*, 913 F.2d 1417, 1422 n.7 (1990).

must be tied to the particular case. *Batson*, 476 U.S. at 98. Third, once the striking party provides a race-neutral explanation, the burden returns to the challenging party to show that the reason given was pretextual and that the striking party engaged in purposeful discrimination. *Id*. Because a finding of intentional discrimination is a finding of fact, a reviewing court must give appropriate deference to the trial court's decision at this last stage. *Id*. at 98 n.21.

**[2]** Whether under the struck jury system waivers of peremptory strikes can form the basis of a *Batson* challenge is a question of first impression. In denying that they can, the district court relied on a case decided by the Arizona Supreme Court. *Paleo*, 22 P.3d at 37. The court in *Paleo* held that under the struck jury system waivers of peremptory strikes in combination with other factors can establish a *prima facie* case of discrimination under *Batson*, but that such waivers standing alone cannot.[6] *Id*. Because under this particular method of jury selection waivers of peremptory strikes result in the removal of known jurors, we conclude that such waivers are best viewed as effective strikes against identifiable jurors, and therefore for the purposes of establishing a *prima facie* case such waivers should be treated the same as the exercise of peremptory strikes.

**[3]** In *Paleo*, the Arizona Supreme Court incorrectly concluded that peremptory strikes and the waiver of these strikes differ because the former require action, while the latter simply inaction. 22 P.3d at 37. Under the struck jury system, both the exercise of a peremptory strike and the waiver of a strike remove a single, clearly identified juror. If a peremptory strike is used, the striking party directly removes an identifi-

---

[6]Two Texas Appellate Courts previously considered, and rejected, the use of a peremptory strike waiver as a basis for a *Batson* challenge. *See Mayes v. State*, 870 S.W.2d 695, 699 (Tex. App. 1994); *Russell v. State*, 804 S.W.2d 287, 290-91 (Tex. App. 1991). In both cases the trial court appears to have used a version of the struck jury system for juror selection.

able juror, and no new juror is seated. Similarly, if a party waives a peremptory strike in the struck jury system, an identifiable juror (the one with the highest juror number) is removed and no new juror is seated. However, under other selection procedures, such as the jury box system, use of a peremptory strike results in the removal of a known juror who is replaced with an unknown, randomly selected juror. Under these systems, the waiver of a peremptory strike does not remove a juror or introduce a new juror.[7] It is only under selection systems like the jury box system that waiver of a peremptory strike amounts to inaction or preservation of the status quo. By contrast, under the struck jury system, a waiver of a peremptory strike is not merely passive, but is more properly viewed as an effective strike of an identifiable juror.

For this reason, the struck jury system has long been criticized for allowing the racial engineering of juries. *See, e.g.*, *United States v. Blouin*, 666 F.2d 796, 798 (2d Cir. 1981) (noting that the struck jury system might "increase the opportunity to shape a jury along racial or other class lines"); James Oldham, *The History of the Special (Struck) Jury in the United States and its Relation to Voir Dire Practices, the Reasonable Cross-Section Requirement, and Peremptory Challenges*, 6 Wm. & Mary Bill Rts. J. 623, 668 (1998) ("It may be easier, however, to camouflage discrimination with the struck jury model because the demographics of the entire panel will be known from the start, making it easier to pick and choose."); Jon M. Van Dyke, *Jury Selection Procedures: Our Uncertain Commitment to Representative Panels* 150 (1977) (observing that the "struck jury system [has been] employed to use [the peremptory challenge] power to elimi-

---

[7]*See* Plevan, 706 PLI/Lit at 451-52 ("For good or for ill, the 'jury box' method focuses on the selection of individual jurors and does not allow the shaping of an entire jury. Counsel have no way of knowing . . . who will replace the challenged juror. This means that counsel must decide who to strike based on the individual's qualities, rather than whether that person is better or worse than the replacement.").

nate entire races or classes of people from jury venires"). As the Second Circuit has noted, "[i]t is far from clear, however, that the right to challenge peremptorily should necessarily imply a right to shape a jury's profile" to the extent allowed by the struck jury system. *Blouin*, 666 F.2d at 798. Despite the power the struck jury system gives to parties to shape the composition of the jury, it has been held to pass constitutional muster, at least in the abstract. *See J.E.B. v. Alabama ex rel T.B.*, 511 U.S. 127, 144 n.17 (1994) (noting that Alabama is free to use the struck jury system so long as its actual use complies with the Constitution); *see also Amsler v. United States*, 381 F.2d 37, 44 (9th Cir. 1967) (upholding the "Arizona system" of jury selection, which is similar to the struck jury system).

The Supreme Court recently held that jury selection procedures may give rise to an inference of discriminatory intent even though the prosecutor is not actively striking potential jurors. In *Miller-El v. Dretke*, 125 S. Ct. 2317, 2332-33 (2005), the Court condemned the use of a practice called the "Texas jury shuffle." Under the Texas Criminal Code, either side may request shuffling of the venire panel such that a certain group of potential jurors (those shuffled to the back of the venire) will likely never be called for voir dire questioning because a jury will be formed before they reach the front of the list. *Id.* at 2332-33 & n.12 (citing Tex. Code Crim. Proc. Ann., Art. 35.11 (Vernon Supp. 2004-2005)). When used to exclude potential black jurors, this practice supported an inference of discrimination.

**[4]** Similarly, the struck jury system allows parties who intentionally want to remove jurors for discriminatory reasons to camouflage these removals by unseating jurors through the waiver of peremptory strikes rather than resorting to direct removals by using peremptory strikes. It is clear that under the struck jury system, the waiver of peremptory strikes, just like the exercise of these strikes, allows those of "a mind to discriminate" to do so. *See Batson*, 476 U.S. at 96 (observing

that "the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate") (internal quotation and citation omitted). Failing to provide protection against removal of identifiable jurors, when such removal is achieved by waiver rather than exercise of a peremptory strike, would frustrate the essential purpose of *Batson* — to eliminate the race-based selection of jurors — and would violate the equal protection rights of both the defendant and prospective jurors.

**[5]** The government correctly notes that it is not required to exercise all of its peremptory challenges and that it was well within its rights to waive five of its six peremptory strikes in this case. In the abstract, this is of course true. The use of peremptory strikes has long been recognized as a capricious and arbitrary right used at the will of the striking party. *See Pointer v. United States*, 151 U.S. 396, 408 (1894) (observing that "[t]he right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to the accused . . . . [H]e may exercise that right without reason or for no reason, arbitrarily and capriciously") (internal quotation omitted). But even this capricious right is limited by equal protection requirements, and when a waiver of a peremptory strike creates an inference of intentional discrimination, the party waiving that strike must provide a race-neutral explanation for its decision to effectively remove a specific juror. The government argues that such a rule would grant the defendant the right to a jury composed in whole or part of persons of his race — a right to which no defendant is entitled. *Batson*, 476 U.S. at 85. We disagree. Our holding simply requires the prosecution to provide race-neutral reasons for a waiver of a peremptory strike under the struck jury system when a defendant establishes a *prima facie* showing of intentional discrimination based on the challenged waiver.

## B.   The Challenge to Juror Lopez

**[6]** Having determined that, under the struck jury system, waivers of peremptory strikes should be treated as effective

peremptory strikes, we begin our analysis of Esparza-Gonzalez's specific *Batson* challenges with the last juror challenged, juror Lopez. We conclude that Esparza-Gonzalez established a *prima facie* case of intentional discrimination with respect to juror Lopez's removal from the pool of alternate jurors. To establish a *prima facie* case, Esparza-Gonzalez must show that (1) he is a member of a cognizable group; (2) the prosecutor has removed members of such a group; and (3) the totality of the circumstances gives rise to an inference that the prosecutor excluded jurors based on race. *Fernandez v. Roe*, 286 F.3d 1073, 1077 (9th Cir. 2002); *United States v. Chinchilla*, 874 F.2d 695, 698 (9th Cir. 1989). In making this showing, the defendant is entitled to rely on the fact that peremptory challenges provide a useful vehicle for those intent on discriminating. *Batson*, 476 U.S. at 96. Likewise, we hold that under the struck jury system, defendants challenging waivers of peremptory strikes may rely on the fact that these waivers also provide a handy means of discriminating. The Supreme Court has held that a defendant can make out a *prima facie* case "by offering a wide variety of evidence, so long as the sum of the proffered facts gives rise to an inference of discriminatory purpose." *Johnson v. California*, 125 S. Ct. 2410, 2416 (2005) (internal citation and quotation omitted).

**[7]** Although our precedent does not require a pattern of removing people of color to establish a *prima facie* case of a *Batson* violation, *see United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994), such a pattern "provides support for an inference of discrimination." *Fernandez*, 286 F.3d at 1078 (internal quotation removed). At the time that Esparza-Gonzalez objected to juror Lopez's removal, the prosecution had effectively struck the only potential Latino juror as well as the only potential Latino alternate. This pattern suggested a general pattern of racial discrimination. However, "[b]ecause the numbers are so small (and, hence, potentially unreliable), two such challenges, standing alone, may not be sufficient to support an inference of discrimination." *Id*. *But*

*see Chinchilla*, 874 F.2d at 698 (finding a *prima facie* case when the prosecutor struck the only prospective Latino juror and the only prospective Latino alternate using his first peremptory strike and his sole peremptory strike for alternate jurors).

**[8]** Esparza-Gonzalez, however, has presented much more than this pattern of removal to support a *prima facie* showing. First, the prosecutor's actions during the jury selection process provide further support, when viewing the totality of the circumstances, for an inference of intentional discrimination. The prosecutor's effective strikes of potential alternate juror Lopez and potential juror Martinez after waiving his opportunity to pose *any* direct questions to the venire panel contributes to an overall inference of discriminatory intent. *See Fernandez*, 286 F.3d at 1079 (relying partly on the fact that the "prosecutor failed to engage in meaningful questioning of any of the minority jurors" to establish the *prima facie* showing). The district court conducted the voir dire, which produced very little distinguishing information on jurors Lopez and Martinez. Juror Lopez and Martinez each responded directly to one question posed by the district court. Ms. Martinez was one of six veniremembers to respond affirmatively to the district court's inquiry into whether any one had previously served on a criminal jury. She reported serving on an income tax evasion case, which resulted in a verdict. *Cf. Miller-El v. Dretke*, 125 S. Ct. at 2325 (engaging in comparative juror analysis and holding that "if a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step"). Though here the prosecutor did not suggest that Ms. Martinez's effective exclusion was based on her prior service in a criminal jury, it is nonetheless relevant for the court to consider the differing treatment of similarly situated potential jurors.

Mr. Lopez was the only veniremember to respond affirmatively to the district court's question of whether anyone trav-

eled to Mexico approximately once every two years. Mr.
Lopez stated that he took leisure trips to places like Cancun.
In addition, the judge asked each juror to state for the court
"where [they] live and what [they] do for a living, if [they]
work outside the home, if [they're] married . . . [and] what
[their] spouse does for a living." The record does not indicate
that juror questionnaires were used for voir dire, and the pros-
ecutor declined the opportunity to ask additional direct voir
dire questions after the district court finished its questioning.
At the time he waived the peremptory strike causing the
removal of juror Lopez, the prosecutor had very little hard
information to base this decision on. Although the prosecutor
has no obligation to question all potential jurors, his failure to
do so prior to effectively removing a juror of a cognizable
group through a waiver may contribute to a suspicion that this
juror was removed on the basis of race. This suspicion, along
with other factors, may lead to an inference of intentional dis-
crimination.

[9] Second, the judicial notice taken, at least initially, by
the district court of the prosecutor's usual practice of exercis-
ing all or most of his peremptory strikes further supports an
inference of intentional discrimination, in light of the totality
of the circumstances. Third, the defense counsel's statement
that another prosecutor from the same office had recently
waived peremptory strikes to remove minority jurors in
another illegal re-entry case also buttresses the defendant's
case that the totality of the circumstances created an inference
of discriminatory intent.

[10] Finally, while illegal re-entry is not necessarily a
racially charged crime, in this case, Esparza-Gonzalez is a
Mexican national and thus race is clearly involved in the pro-
ceeding. This fact is one that should also be considered when
evaluating whether the totality of the circumstances gives rise
to an inference of discriminatory intent. Presumably recogniz-
ing the racial element inherent in the trial, the district court
asked all jurors during voir dire whether "the fact that the

defendant is Hispanic, would . . . in any way influence any of you in making a decision in this case." *See Simmons v. Beyer*, 44 F.3d 1160, 1168 (3d Cir. 1995) (noting a similar question posed by the trial court when evaluating the defendant's *prima facie* case). Therefore, based on the pattern of exclusion of the only two Latino veniremembers as well as on the relevant circumstances surrounding the challenge to juror Lopez's removal, we conclude that the district court erred in finding that the defendant failed to make a sufficient showing to establish a *prima facie* case.

**[11]** Because the district court never required the prosecution to articulate a race-neutral reason for juror Lopez's removal, we remand for an evidentiary hearing to allow the prosecution to present evidence of the actual reason for this removal. *See Paulino v. Castro*, 371 F.3d 1083, 1092 (9th Cir. 2004) (citing *Batson*, 476 U.S. at 100). After this evidence is presented, the district court should, in the first instance, evaluate the validity of any offered race-neutral explanations for juror Lopez's removal. *Id.*

## C. The Challenge to Juror Martinez

Initially, the district court determined that the defense established a *prima facie* case under *Batson* with respect to the removal of juror Martinez and asked the prosecutor for a response to the challenge. The prosecutor responded that he was "waiving the rest" of his peremptory strikes. The district court was not satisfied with this race-neutral explanation for the removal of juror Martinez and instructed the clerk to strike the next juror in line instead of juror Martinez. The prosecutor objected to the district court's conclusion that he intentionally discriminated against juror Martinez and eventually convinced the district court to reassess this *Batson* challenge.

The Supreme Court has held that when a party articulates a race-neutral reason for a challenged strike and the trial court proceeds to the last step of the *Batson* inquiry to determine

whether the party intentionally discriminated in making the strike, the initial question of whether a *prima facie* showing was established is moot before the reviewing court. *Hernandez v. New York*, 500 U.S. 352, 359 (1991) (plurality opinion). In reaching this holding, the Supreme Court relied on an earlier decision in the Title VII employment discrimination context. *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983). In *Aikens*, the Supreme Court concluded that when "the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant." *Id.*

**[12]** In *Aikens*, as in the case at hand, the district court initially concluded that a *prima facie* case of intentional discrimination had been established, but later returned to this question instead of focusing on the ultimate inquiry of racial discrimination *vel non*. *Id.* at 714-15 & n.4. The Supreme Court held that once the district court had found a *prima facie* case and required the challenged party to proffer a race-neutral explanation, "the factual inquiry proceeds to a new level of specificity" and the district court must decide the ultimate issue — the existence or not of discriminatory intent. *Id.* at 715 (internal quotations and citation omitted). Esparza-Gonzalez argues that this holding applies with equal force to the *Batson* context and to his challenge to juror Martinez's removal. We agree. Once the district court found that the removal of juror Martinez violated *Batson*, it could not reevaluate this finding of intentional discrimination — even during the same hearing — based simply on a reassessment of the strength of the initial *prima facie* case. *See Durant v. Strack*, 151 F. Supp. 2d 226, 242 (E.D.N.Y. 2001) (holding that once the trial court made a preliminary finding of discriminatory intent, the court could not revert to step one of the *Batson* analysis to reevaluate whether a *prima facie* case had been established). To allow juror Martinez's removal, the district court would have had to reverse its earlier conclusion that the prosecutor intentionally discriminated against her. Accept-

ing anything less would run afoul of the Supreme Court's decisions in *Hernandez* and *Aikens*.

**[13]** We disagree with Esparza-Gonzalez's contention that this error on the part of the district court is structural and requires reversal of his conviction. As the Supreme Court did in *Aikens*, we remand to the district court for a determination of the ultimate *Batson* issue — was the removal of potential juror Martinez the result of intentional discrimination — with Esparza-Gonzalez bearing the burden of persuasion. We realize, of course, that the district court at one point did conclude that there had been intentional discrimination. However, because the court later withdrew that determination, we think the best course of action is to remand to the district court.

## II.  Sentencing Challenge

Esparza-Gonzalez argues that his Sixth Amendment rights were violated when the district court increased his sentence by sixteen levels based on his prior conviction for drug trafficking, a fact not found by the jury convicting him for illegal re-entry. The Supreme Court has made clear, however, that enhancements based on prior convictions need not be proven beyond reasonable doubt by a jury or admitted by the defendant to satisfy the Sixth Amendment. *United States v. Booker*, 125 S. Ct. 738, 748-49 (2005).

**[14]** Esparza-Gonzalez seeks a remand based on the fact that he was sentenced under the mandatory sentencing regime. *See United States v. Moreno-Hernandez*, No. 03-30387, slip op. 10795, 10813 (9th Cir. Aug. 17, 2005) ("We conclude that defendants are entitled to limited remands in all pending direct criminal appeals involving unpreserved *Booker* error, whether constitutional or nonconstitutional."). We therefore REMAND Esparza-Gonzalez's sentence in accordance with the limited remand procedures in *United States v. Ameline*, 409 F.3d 1073, 1084 (9th Cir. 2005) (en banc).

## CONCLUSION

Based on the foregoing discussion, we REVERSE the district court's finding that the defendant failed to establish a *prima facie* case of discrimination with respect to juror Lopez and REMAND to the district court to determine if a race-neutral explanation for the exclusion can be provided and if this explanation is merely pretext for discrimination. We also REMAND the challenge regarding juror Martinez for further proceedings to allow the district court to revisit its earlier determination as to whether intentional discrimination occurred contrary to *Batson* such that a new trial is merited. Lastly, we REMAND Esparza-Gonzalez's sentence to the district court.

**Reversed in part and remanded in part.**